Filed 4/16/25  P. v. Holmes CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083168 |
| v. | (Super.Ct.No. FELSS1004244) |
| JOSEPH RUBEN HOLMES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Kawika Smith, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Andrew Mestman and Jon S. Tangonan, Deputy Attorneys General, for Plaintiff and Respondent.

Joseph Ruben Holmes appeals his commitment to an indeterminate term in the custody of the State Department of State Hospitals as a sexually violent predator. He argues his constitutional rights to due process and equal protection were violated because the commitment trial proceeded while he was mentally incompetent. We find no constitutional violation and affirm.

BACKGROUND

In 2010, the San Bernardino County District Attorney petitioned to have Holmes committed indefinitely as a sexually violent predator under Welfare and Institutions Code section 6600, et seq., also known as the Sexually Violent Predator Act (SVPA). In 2011, the court found the petition supported by probable cause under Welfare and Institutions Code section 6602, and Holmes was transferred from county jail to a state hospital.

In 2019, Holmes moved to dismiss the petition. The motion raised arguments similar to those raised in this appeal. Holmes (acting through counsel) asserted that to proceed with a trial on the petition while he is legally incompetent would violate his right to due process, in part because negligent mental health treatment he received at the state hospital caused his incompetency. He also argued his right to equal protection was violated because the SVPA denied him protections afforded to those committed under the Mentally Disordered Offender Act (MDOA) (Pen. Code, § 2962 et seq.) or found not guilty by reason of insanity (Pen. Code, § 1026 et seq.). In 2020, the trial court denied the motion to dismiss.

2

In October 2023, the trial court admitted the prosecution's exhibits in support of the petition and ordered an evaluation of Holmes's mental competence to stand trial under Penal Code section 1368. The evaluation, filed in December 2023, found Holmes incompetent, observing that due to "uncontrolled psychotic symptoms" he "would have a compromised ability to maintain appropriate courtroom behavior" and would have difficulty assisting or communicating rationally with his attorney. Also in December 2023, the court heard argument on the petition.

In January 2024, the trial court granted the petition, finding Holmes "meets the criteria of a sexually violent predator."

DISCUSSION

Holmes argues the trial court violated his constitutional right to due process by proceeding with trial on the petition while he was incompetent to stand trial. He acknowledges, however, that we will "most likely view" *People v. Moore* (2010) 50 Cal.4th 802 (*Moore*) "as binding authority and reject his due process claim." He is correct.

In *Moore*, our Supreme Court applied a four-factor balancing test from *Morrissey v. Brewer* (1972) 408 U.S. 471, 481 to determine "'what process is due' a potential civil committee." (*Moore, supra*, 50 Cal.4th at p. 819.) The four factors are "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function

3

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official."  (*Ibid.*) "Balancing all the foregoing factors, and placing special weight on the 'paramount' interest in public safety," the Court concluded "due process does not require mental competence on the part of someone undergoing a commitment or recommitment trial under the SVPA."  (*Id.* at p. 829.)

Holmes argues *Moore* was "incorrectly decided" for the reasons articulated in the case's dissent.  (See *Moore*, *supra*, 50 Cal.4th at p. 829-837 (dis. opn. of Moreno, J.).) Recognizing that is not a position we could adopt (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456-457), he raises the claim "to preserve his right to ask the California Supreme Court to reconsider [*Moore*] and to preserve it for federal review . . . ."  As we are bound by *Moore*, we therefore reject the argument without further discussion.

Holmes also attempts to distinguish *Moore* based on his allegation—asserted in both his motion to dismiss and again on appeal—that he received "negligent mental health treatment" while incarcerated, contributing to his now being incompetent to stand trial.  *Moore* discusses no such allegation.  Holmes offers no reasoned argument, however, as to why this distinction should matter to any of the factors applied in *Moore*, or why it might otherwise allow us to reach a different conclusion than *Moore* about what

4

due process requires. For similar reasons, Holmes's allegation that the Legislature has been "negligent" because it has failed to "enact procedures to restore a SVP defendant to competency" since 2010, when *Moore* was decided, is also unavailing. *Moore*'s binding holding precludes our reaching a different outcome on these arguments.

Holmes's equal protection claim is not similarly foreclosed by Supreme Court authority. Nevertheless, it is unpersuasive.

Holmes argues that """"the first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.""" (*People v. McKee* (2010) 47 Cal.4th 1172, 1202 (*McKee*)[1] (italics omitted).) His argument on this point is that the due process rule established in *Moore*—that someone undergoing an SVPA commitment or recommitment trial need not be mentally competent for the commitment trial to proceed—violates equal protection in its contrast with the treatment of a defendant committed after entering a plea of not guilty by reason of insanity or one civilly committed or recommitted under the MDOA. He reasons that a "defendant who enters a

---

[1] The parties have framed their arguments around the standard articulated in *McKee*, even though at the time briefing was conducted, our Supreme Court had already clarified the equal protection inquiry in *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*). In *Hardin*, the Court held "courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not." (*Id.* at pp. 850-851.) We address the arguments the parties have made under *McKee*, but note that we would reach the same conclusion under *Hardin*.

5

plea of not guilty by reason of insanity must be legally competent to be tried," and "[a] MDO defendant must be competent."

Holmes's reasoning does not hold water. *Any* criminal defendant has a constitutional right not to be tried on *criminal* charges while mentally incompetent. (*Moore*, *supra*, 50 Cal.4th at p. 818.) The authority Holmes cites applies this principle in the context of defendants found not guilty by reason of insanity or civilly committed under the MDOA. (See *People v. Prince* (1988) 203 Cal.App.3d 848, 851 [after defendant found not guilty by reason of insanity, criminal proceedings were suspended and defendant was committed to state hospital]; *People v. Blackburn* (2015) 61 Cal.4th 1113, 1129 (*Blackburn*) ["By definition, every mentally disordered offender has previously been deemed competent to stand trial . . . ."].) But the same is true for an alleged sexually violent predator, who also must have been previously deemed competent to stand criminal trial. (See § 6600, subd. (a)(1) [sexually violent predator is "a person who has been convicted of a sexually violent offense against one or more victims . . . ."].)

Instead, a proper comparison is between a commitment or recommitment trial under the SVPA and a civil commitment or recommitment trial under the MDOA or a proceeding to confine or extend the confinement for treatment of a person found not guilty by reason of insanity. Those subject to such proceedings are similarly situated, in that though connected to an underlying criminal case, they are potentially subject to involuntary *civil* commitment for treatment of a mental disorder. (See *Conservatorship*

6

*of Eric B.* (2022) 12 Cal.5th 1085, 1095.)  The question Holmes fails to address at all is whether *these* groups are treated in an unequal manner.

They are not.  Under *Moore*, the offender need not be mentally competent for an SVPA commitment or recommitment trial to proceed.  (*Moore*, *supra*, 50 Cal.4th at p. 829.)  The same is true under the MDOA.  (See *Blackburn*, *supra*, 61 Cal.4th at p. 1125 [construing Pen. Code, § 2972, subd. (a) "to establish a default rule that a court must obtain a personal waiver of the defendant's right to a jury trial before holding a bench trial," but "when the trial court finds substantial evidence that defendant lacks the capacity to make a knowing and voluntary waiver, control of the decision shifts to defense counsel"].)  The same is true for defendants found not guilty by reason of insanity.  (See *Hudec v. Superior Court* (2015) 60 Cal.4th 815, 828-829 ["If a [Pen. Code] section 1026.5 extension hearing could not proceed until any doubts about the respondent's competence were resolved, the issue of [the] respondent's continuing mental illness, central to the hearing under [Pen. Code] section 1026.5, subdivision (b)(1), would tend to be subsumed within nonstatutory proceedings on mental competence, and the hearing called for by section 1026.5 could be indefinitely delayed"].)

Thus, Holmes fails to establish even the """"first prerequisite"""" for a successful equal protection claim under *McKee*, *supra*, 47 Cal.4th at p. 1202, unequal treatment of similarly situated groups.  We would reach the same disposition under *Hardin*, *supra*, 15

Cal.5th at p. 851, analyzing "whether the challenged difference in treatment was adequately justified under the applicable standard of review."

DISPOSITION

The commitment order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL

J.

We concur:

FIELDS

Acting P. J.

MENETREZ

J.